IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| REBECCA R. GREENE,<br><br>     Plaintiff,<br><br>  vs.<br><br>CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant. | **CV 15-53-GF-BMM-JTJ**<br><br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

## I. SYNOPSIS

Rebecca Greene seeks disability benefits under the Social Security Act. The Social Security Administration ("Administration") determined that Ms. Greene is not disabled because she is capable of performing work that exists in significant numbers in the national economy, despite her severe impairments from diabetes mellitus and a lumbar back disorder. The Administration therefore determined that Ms. Greene should not receive benefits. The Administration supported its decision with substantial evidence. The Court should deny Ms. Greene's Motion for

1

Summary Judgment and enter judgment in favor of the Commissioner of Social Security (the "Commissioner").

## II. JURISDICTION

The Court possesses jurisdiction over this action pursuant to 42 U.S.C. § 405(g) (2015). The case is assigned to United States District Court Judge Brian Morris and referred to the undersigned to submit findings and recommendations on dispositive motions. (Doc. 7.) The Great Falls Division of the District of Montana is the proper venue because Ms. Greene resides in Pondera County, Montana. (Doc. 2 at 2); 42 U.S.C. § 405(g); Local Rule 1.2(c)(2).

## III. STATUS

An administrative law judge ("ALJ") decided, on February 6, 2014, that Ms. Greene failed to qualify for disability benefits under Title II or Title XVI of the Social Security Act. Tr. 12-22. Ms. Greene requested that the Administration review the ALJ's decision. Tr. 7. The Administration denied Ms. Greene's request for review on May 12, 2015, thereby making the ALJ's decision the final decision of the Commissioner. Tr. 1-4.

On July 13, 2015, Ms. Greene filed a complaint, seeking judicial review of the Commissioner's decision. (Doc. 2.) Ms. Greene requests that the Court reverse

the Commissioner's decision and remand the case for payment of benefits. (Doc. 16 at 19; Doc. 21 at 8.)

## IV.  STANDARDS

### A.    Court's role

The Court may set aside the Commissioner's decision only where the Court determines the decision is not supported by substantial evidence or where the decision is based on legal error. *Maounis v. Sheckler*, 738 F.2d 1032, 1034 (9th Cir. 1984). Substantial evidence represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988). The Court must uphold the ALJ's conclusion when evidence proves susceptible to more than one rational interpretation. *Thomas v. Barhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The district court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Sheckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

**B.      Disability criteria**

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that: (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments prove so severe that, considering the claimant's age, education, and work experience, the claimant cannot perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five. *Id*. at 954. The five steps of the inquiry are:

1.      Is claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.     Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.     Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.     Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.     Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id*.

# V. BACKGROUND

## A.     ALJ's determination

At step one, the ALJ determined that Ms. Greene had not engaged in substantial gainful activity since April 1, 2011, the alleged onset date. Tr. 14. At step two, the ALJ found that Ms. Greene suffers from the following severe impairments: diabetes mellitus and a lumbar back disorder. Tr. 15. At step three, the ALJ found that Ms. Greene did not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id*. At step four, the ALJ determined that Ms. Greene possessed the

residual functional capacity to perform her past relevant work as a desk clerk, a housekeeper, and a newspaper deliverer. Tr. 20. The ALJ also made an alternative finding at step five that Ms. Greene possessed the residual functional capacity to perform work that exists in significant numbers in the national economy as a parking lot attendant, sewing machine operator, and office helper. Tr. 20-21. Finally, the ALJ determined that Ms. Greene was not disabled from her alleged onset date through February 6, 2014, the date of the ALJ's decision. Tr. 21-22.

### B.    Ms. Greene's position

Ms. Greene argues that the Commissioner's decision should be reversed and the case remanded for payment of benefits because:

1.    The ALJ did not give proper weight to her treating physician's opinion that her impairments preclude her from working;

2.    The ALJ erred in assessing her credibility;

3.    The ALJ erred in using her daily activities to find her subjective complaints not credible because the record shows her daily activities are very limited and far less than the activity required for sustained work activity;

4.    The ALJ did not properly consider the testimony of her mother and six third-party statements;

5. The ALJ erred by failing to address the severity of her chronic obstructive pulmonary disease (COPD) and failed to consider this limitation when assessing her residual functional capacity; and

6. The ALJ's residual functional capacity assessment is erroneous because it is not supported by the record, and the hypothetical to the vocational expert was therefore erroneous as well.

Doc. 16 at 2-3.

## VI. ANALYSIS

The undersigned determines after a review of the record that the Commissioner's decision is reasonably supported by substantial credible evidence and is free of legal error.

### A. The ALJ did not error in giving Dr. Marler's opinions little weight.

Dr. Marler was a treating physician of Ms. Greene. Dr. Marler submitted an April 24, 2013 letter, and he also completed a medical source statement dated June 18, 2013. Tr. 423-29, 430. The letter and medical source statement express Dr. Marler's opinions concerning Ms. Greene's limitations and inability to work. The ALJ gave "little weight" to Dr. Marler's opinions. Tr. 18.

Ms. Greene argues the ALJ erred because: (1) the one inconsistency the ALJ noted in the seven page medical source statement is not a legitimate reason to give little weight to the entire report; (2) the record supports Dr. Marler's opinions; and (3) her testimony was consistent with Dr. Marler's opinions. The Commissioner agues the ALJ gave specific and legitimate reasons supported by substantial evidence for giving Dr. Marler's opinions little weight.

To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995)). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id*. When evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Id*. (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001)).

Dr. Marler's opinions were contradicted by the opinions of Drs. Fernandez and Jordan, who determined that Ms. Greene was capable of performing a reduced range of light work. Tr. 18. Therefore, to reject Dr. Marler's opinions, the ALJ was required to provide specific and legitimate reasons.

The ALJ gave the following reasons for giving Dr. Marler's opinions little weight: (1) the opinion that Ms. Greene can stand and walk the same length of time in one hour as she can stand in an eight hour day is internally inconsistent; (2) the extreme limitations to which Dr. Marler opined are not supported by the objective medical evidence; and (3) the limitations do not correlate to Ms. Greene's stated limitations or her own testimony. Each of these reasons is a specific and legitimate reason to reject Dr. Marler's opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (holding that the ALJ may reject check-off reports expressing opinions from treating physicians that do not contain any explanation of the bases of their conclusions); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that the ALJ may reject opinions from treating physicians that are inconsistent with the claimant's own allegations); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that the ALJ may reject a treating physicians opinions that are internally inconsistent).

A review of the record reveals that Dr. Marler gave only cursory explanations for her opinions in the medical source statement regarding Ms. Greene's limitations for sitting, standing, and walking, and she provided no explanation at all for her opinion regarding Ms. Greene's limitations in using her hands. The record also reveals that Dr. Marler's medical source statement limited Ms. Greene to never being exposed to dust, odors, fumes, and pulmonary

conditions, but this was not consistent with Ms. Greene's testimony that her COPD was controlled by medication. Next, Dr. Marler's medical source statement limitation that Ms. Greene could only use her lower extremities occasionally to operate foot controls was not consistent with Ms. Greene's testimony that she experienced pain in only her right leg. Finally, the record reveals that Dr. Marler's medical source statement limiting Ms. Greene to standing and walking for one hour at a time, but no more than one hour in an eight hour day was internally inconsistent.

The ALJ's reasons for giving Dr. Marler's opinions little weight are specific and legitimate. There was substantial evidence in the record supporting these reasons. Therefore, the ALJ did not err in giving Dr. Marler's opinions little weight.

**B.      The ALJ did not error in finding Ms. Greene's symptom testimony not entirely credible.**

The ALJ determined that Ms. Greene's medically determinable impairments could reasonably be expected to cause her alleged symptoms. Tr. 17. The ALJ also determined, however, that Ms. Greene's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id*. Ms. Greene argues that the ALJ erred by discounting her credibility. (Doc. 15 at 7-10.) The Commissioner argues that the

ALJ's reasons for discounting Ms. Greene's credibility are specific, clear, and convincing and supported by substantial evidence, and that the ALJ's credibility determination must therefore be affirmed.

To assess "the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). The ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms [when the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

The ALJ gave the following reasons for finding Ms. Greene's symptom testimony not entirely credible: (1) Ms. Greene "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, which weakens her credibility"; (2) "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations"; and (3) "the record consistently stated that

the claimant is a very non-compliant diabetic, as she is non-compliant with checking her blood sugars and frequently misses taking her insulin." Tr. 17.

### 1. Daily activities

An ALJ may discredit a claimant's allegations to the extent they are inconsistent with the claimant's daily activities. *Molina*, 674 F.3d at 1112-13. In relation to Ms. Greene's daily activities, the ALJ referenced treatment notes indicating her activities of daily living were intact, and Ms. Greene testified that she can: prepare meals; clean; wash dishes; do laundry; take care of her personal needs; walk; drive or get a ride when she needs to travel; shop in stores; transport her son's girlfriend's daughter to and from school; visit her mother and take her mother to appointments; read and watch television; take trips; work 15 hours per week; and deliver newspapers. *Id*. Substantial evidence in the record supports the ALJ's finding that Ms. Greene's daily activities are not as limited as one would expect given her complaints of disabling symptoms.

Ms. Greene also argues that the ALJ erred in relying on her daily activities as a basis to find her symptom testimony less than entirely credible because the record shows her daily activities are very limited and far less than the activity required for sustained work activity. The Commissioner argues that: the ALJ's determination is supported by substantial evidence; even if the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be

upheld; and the ALJ's credibility determination should be upheld even if the ALJ erred in evaluating Ms. Greene's daily activities because the ALJ's other reasons are specific, clear, and convincing.

When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing *Tackett*, 180 F.3d at 1098). As discussed above, the ALJ offered a rational interpretation of the evidence, including a physician's treatment note stating that Ms. Greene's activities of daily living were intact, and gave valid reasons supported by substantial evidence in support of his analysis. Therefore, although Ms. Greene's interpretation of the evidence would support her claim, the evidence reasonably supports the ALJ's interpretation of Ms. Greene's daily activities. Furthermore, the ALJ cited other reasons for finding Ms. Greene's symptom testimony not entirely credible, and these reasons are independent of her daily activities. As such, even if the ALJ erred in relying on Ms. Greene's daily activities, the other reasons remain, and as discussed below, they provide a legal basis upon which the ALJ was allowed to find Ms. Greene's symptom testimony less than entirely credible.

> **2.** **Objective medical evidence and failure to follow prescribed course of treatment**

An ALJ may also discredit a claimant's allegations to the extent they do not comport with the objective medical evidence in the record. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Furthermore, the ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed source of treatment in weighing the claimant's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)).

Here, the ALJ's decision discussed the medical evidence concerning both Ms. Greene's diabetes mellitus and back disorder. In relation to her diabetes, the ALJ specifically discussed that: Ms. Greene was non-compliant with checking her blood sugar and taking her insulin; on one hospitalization Ms. Greene had not taken her insulin the day before because she had not eaten; and on other hospitalizations, her high blood sugar and diabetic ketoacidosis resolved upon discharge. Tr. 17. In relation to her back disorder, the ALJ specifically discussed that in contrast to Ms. Greene's testimony about debilitating back pain, the medical treatment notes established that her lumbar range of motion was slightly decreased in the lateral directions but was normal with extension, and the rest of her range of motion was normal, her muscle strength and stability in all of her extremities was normal, her paraspinous muscle tone was normal, her extremities had no edema, and her gait, station, balance, posture, and squat and recovery were all normal. Tr.

18. Substantial evidence in the record supports the ALJ's findings in relation to the objective medical evidence failing to provide strong support for Ms. Greene's allegations and Ms. Greene's failure to treat her diabetes.

### 3.     Conclusion

The ALJ provided specific and clear reasons for discounting Ms. Greene's testimony. Furthermore, the ALJ's reasons are convincing and supported by substantial evidence. Therefore, the ALJ did not err in finding Ms. Greene's symptom testimony not entirely credible.

### C.     The ALJ properly weighed the testimony of Ms. Greene's mother and six third-party statements.

Ms. Greene's mother testified in support of Ms. Greene's claim and six other individuals provided statements in support of her claim. Ms. Greene argues the ALJ erred in failing to assign more weight to her mother's testimony and the six statements. (Doc. 15 at 11-13.) The ALJ discussed Ms. Greene's mother's testimony and the six statements and gave the following reasons for not giving them significant weight: (1) since Ms. Greene's mother, friends, and other relatives are not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms, the accuracy of the information provided is questionable; (2) by virtue of their relationships with Ms. Greene, her friends and

relatives cannot be considered disinterested third party witnesses; and (3) most importantly, significant weight cannot be given to third party testimony and statements because they, like Ms. Greene's symptom testimony, are inconsistent with the preponderance of the opinions and observations by medical providers. Tr. 19.

Ms. Greene argues that lack of medical training is not a legally permissible reason to reject the testimony and statements of lay testimony. (Doc. 15 at 12.) She also argues that her mother's testimony and the six statements are consistent with the medical evidence and that they corroborate her testimony. *Id*. Finally, Ms. Greene argues that the ALJ is speculating when he states that Ms. Greene's mother, her friends, and those who submitted the six statements are not disinterested. The Commissioner argues the ALJ properly discounted Ms. Greene's mother's testimony and the six statements because they were not consistent with the opinions and observations of the medical providers, which is a germane reason to reject testimony.

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Molina*, 674 F.3d at 1114 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996)); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993). Competent lay witness testimony "cannot be disregarded without comment." *Id*. Further, in

order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Id*. The ALJ is not, however, required to discuss every witness's testimony on a individualized, witness-by-witness basis. *Id.* Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Id*. (citing *Valentine v. Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").

The testimony from Ms. Greene's mother and the six statements are similar to Ms. Greene's symptom testimony. As discussed above, the ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Ms. Greene's symptom testimony, one of which was that her testimony did not comport with the objective medical evidence in the record. The ALJ relied on this reason when addressing Ms. Greene's mother's testimony and the six statements. An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. *Bayliss*, 427 F.3d at 1218 (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001)). Inconsistency with medical evidence is one such reason. *Id*.

Although the first two reasons the ALJ's gave to discredit the lay testimony and statements may be invalid, the ALJ also gave a valid, germane reason supported by substantial evidence in the record to discredit the lay testimony and statements. Any invalid reasons the ALJ stated do not render the other valid reason invalid. As such, the ALJ did not commit legal error.

**D.    The ALJ properly included all credible limitations in the residual functional capacity assessment.**

Ms. Greene argues the ALJ's residual functional capacity assessment is erroneous because: (1) the ALJ failed to address the severity of her COPD; (2) the ALJ failed to consider her COPD in assessing her residual functional capacity; and (3) the residual functional capacity assessment is not supported by the record. The Commissioner argues that the ALJ's residual functional capacity assessment is proper because it included all credible limitations, and that Ms. Greene is merely restating her arguments about whether the ALJ erred in evaluating Dr. Marler's testimony, her testimony, her mother's testimony, and the lay witness statements.

The ALJ is charged with assessing a claimant's residual functional capacity based upon medical records, physicians' opinions, and the claimant's description of her limitations. 20 C.F.R. §§404.1545(a), 416.945(a)(3). The ALJ should resolve conflicts in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). A claimant does not establish error at step

five by simply restating arguments that the ALJ erred in discounting certain evidence. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1176–77 (9th Cir. 2008). Furthermore, in assessing a claimant's residual functional capacity, the ALJ is not required to take into account claimed limitations the ALJ found to be incredible or not supported by the record. *Bayliss*, 427 F.3d at 1217.

Ms. Greene relies on Dr. Marler's opinions related to her claim of severe COPD. However, as discussed above, the undersigned has determined that the ALJ did not err in assigning little weight to Dr. Maher's opinions. Furthermore, although Ms. Greene argues that her testimony, her mother's testimony, and statements from lay witnesses establish that she has limitations that preclude her from working, the undersigned has determined that the ALJ did not err in determining that her testimony was not entirely credible and that the ALJ properly weighed the lay witness testimony and statements.

The ALJ assessed Ms. Greene's residual functional capacity in light of those limitations the ALJ found credible and supported by substantial evidence. Tr. 16-19. The undersigned therefore finds no legal error in the ALJ's assessment of Ms. Greene's residual functional capacity.

### E.     The ALJ's hypothetical to the vocational expert was proper.

Ms. Greene argues that the ALJ's hypothetical to the vocational expert was erroneous because it did not include all of her limitations. The Commissioner argues that the ALJ hypothetical posed to the vocational expert was proper because it contained all of the limitations the ALJ found credible and supported by substantial evidence in the record.

It is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir.1989). That is what the ALJ did here. Therefore, the ALJ's hypothetical concerning Ms. Greene was free of legal error.

## VII. CONCLUSION

The ALJ supported his decision with substantial evidence. The ALJ did not commit legal error. Ms. Greene failed to meet her burden of proving that she is disabled.

Therefore, the undersigned issues the following:

## RECOMMENDATIONS

1.  Ms. Greene's Motion for Summary Judgment (Doc. 16) should be **DENIED**.

2. The Clerk of Court should be directed to enter judgment in favor of
   Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

   DATED this 5th day of April, 2016.


John Johnston
United States Magistrate Judge